[Cite as *State v. Kuhn*, 2018-Ohio-4065.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2018-01-003 |
| | : | O P I N I O N |
| - vs - | | 10/8/2018 |
| | : | |
| CHELSEA KUHN, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 16CR31682

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, OH, for plaintiff-appellee

Kidd & Urling, LLC, Thomas W. Kidd, Jr., 8913 Cincinnati-Dayton Road, West Chester, OH 45069, for defendant-appellant

**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Chelsea Kuhn, appeals from the decision of the Warren County Court of Common Pleas revoking her intervention in lieu of conviction ("ILC") after she was found guilty of violating the terms and conditions of her ILC treatment plan. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} On March 14, 2016, the Warren County Grand Jury returned a three-count indictment charging Kuhn with single counts of trespass in a habitation, resisting arrest, and obstructing official business. The charges arose after Kuhn trespassed into the home of her ex-boyfriend's mother, thus prompting a call to the police. After the police arrived at the scene, Kuhn, who was intoxicated, wrestled with police as the responding officers attempted to place her under arrest. The record indicates Kuhn struggles with substance abuse and mental health issues, including severe and debilitating anxiety, depression, and manic episodes, which were a significant factor leading to the commission of the above-named offenses.

{¶ 3} On May 2, 2016, Kuhn filed a motion with the trial court requesting she be granted ILC in accordance with R.C. 2951.041. Pursuant to that statute, if an offender is charged with a crime, and the trial court has reason to believe that drug or alcohol use was a factor leading to the commission of that crime, "the court may accept, prior to the entry of a guilty plea, the offender's request for intervention in lieu of conviction." R.C. 2951.041(A)(1). After filing her motion for ILC, the trial court ordered Kuhn to submit to an assessment to determine her eligibility for ILC and, if she was deemed eligible, the appropriate ILC treatment plan.

{¶ 4} On June 21, 2016, the trial court held a hearing on Kuhn's motion for ILC. At this hearing, the trial court determined Kuhn was eligible for ILC and thereafter granted Kuhn's request that she be placed on ILC. In accordance with R.C. 2951.041, Kuhn then entered a guilty plea to the three charged offenses then pending, which the trial court accepted, and placed Kuhn on ILC with a corresponding ILC treatment plan. The trial court thereafter informed Kuhn that she was to adhere to all of the terms and conditions of her ILC treatment plan. This included a requirement that Kuhn comply with all orders given to

her by the probation officer assigned to her case.

{¶ 5} Over a year later, on October 30, 2017, Kuhn's probation officer filed a report with the trial court alleging Kuhn had violated the terms and conditions of her ILC treatment plan by failing to report as instructed. Kuhn's probation officer further alleged that "after attempts to contact [Kuhn] were unsuccessful a warrant was issued for her arrest." After receiving this report, the trial court scheduled the matter for a hearing on November 1, 2017. Kuhn appeared at this hearing and entered a plea of not guilty to violating the terms and conditions of her ILC treatment plan. Kuhn was then appointed an attorney and a final hearing on the matter was scheduled for November 9, 2017.

{¶ 6} On November 6, 2017, three days before the final hearing was scheduled to begin, Kuhn filed a motion requesting a continuance so that she could submit to a mental health evaluation. Three days later, Kuhn appeared before the trial court for the previously scheduled November 9, 2017 final hearing. As part of this hearing, the trial court noted that Kuhn needed a mental health evaluation so that she could be properly diagnosed and treated for her mental health issues. The trial court then granted Kuhn's motion for a continuance and rescheduled the matter for final hearing on December 29, 2017.

{¶ 7} On December 11, 2017, Kuhn filed a notice with the trial court alleging she "may have been insane" in the weeks leading up to when she failed to report to her probation officer as alleged. In support, Kuhn argued there was no evidence that she knew that she had been instructed to report to her probation officer as required by the terms and conditions of her ILC treatment plan. Kuhn also argued that she "did not choose to abscond" due to her mental health issues at that time, which, according to affidavits submitted by Kuhn's parents, included severe and debilitating anxiety and depression.

{¶ 8} On December 29, 2017, Kuhn appeared at the final hearing before the trial court and stipulated to the fact that she did not report to her probation officer as alleged and

- 3 -

as required by the terms and conditions of her ILC treatment plan. Kuhn, however, argued she should not be found guilty of violating her ILC treatment plan due to her mental health issues. Kuhn also argued that she should not be found guilty because she did not act knowingly or purposefully in failing to report to her probation officer. Specifically, Kuhn argued "[n]o matter whether you call it knowing, aware, purposeful intent, there wasn't." Kuhn further argued that she was "just a person with some severe mental health defects and that affects her decision in this matter."

{¶ 9} The trial court was not persuaded by Kuhn's arguments and found her guilty of violating the terms and conditions of her ILC treatment plan as alleged by her probation officer. In so holding, the trial court stated:

> It's my job to apply the law as I see it. The law is, at least as we sit here today, Ms. Kuhn, that if you violate the terms of the treatment plan, then I have to revoke your intervention in lieu of conviction, so based upon that and that reason alone, I am going to revoke your intervention in lieu of conviction.

After finding Kuhn guilty of violating the terms and conditions of her ILC treatment plan, the trial court reinstated her prior guilty plea and sentenced Kuhn to a three-year community control term. Kuhn now appeals from the trial court's decision revoking her ILC, raising three assignments of error for review.

**Intervention in Lieu of Conviction and R.C. 2951.041**

{¶ 10} Before addressing Kuhn's three assignments of error, we note that it is R.C. 2951.041 that governs the ILC procedure. Generally, R.C. 2951.041 provides that, upon request, certain eligible offenders may be placed under the general control and supervision of the county probation department, or another comparable agency, "and if the individual successfully completes an intervention plan, he will have the criminal proceedings against him dismissed." *State v. Ingram*, 8th Dist. Cuyahoga No. 84925, 2005-Ohio-1967, ¶ 9; *State v. Lingg*, 2d Dist. Montgomery No. 2011 CA 8, 2011-Ohio-4543, ¶ 9.

{¶ 11} By enacting R.C. 2951.041, "'the legislature made a determination that when chemical abuse is the cause or at least a precipitating factor in the commission of a crime, it may be more beneficial to the individual and the community as a whole to treat the cause rather than punish the crime.'" *State v. Massien*, 125 Ohio St.3d 204, 2010-Ohio-1864, ¶ 10, quoting *State v. Shoaf*, 140 Ohio App.3d 75, 77 (10th Dist.2000), citing *State v. Baker*, 131 Ohio App.3d 507, 510 (7th Dist.1998). "ILC is not designed as punishment, but rather as an opportunity for first-time offenders to receive help for their dependence without the ramifications of a felony conviction." *Id.*, citing *Ingram* at ¶ 13. The granting of a motion for ILC lies in the trial court's sound discretion. *State v. Lattimore*, 12th Dist. Butler No. CA2000-12-255, 2001 Ohio App. LEXIS 4143, *3-4 (Sept. 17, 2001), citing *State v. Gadd*, 66 Ohio App.3d 278, 279-280 (2d Dist.1990).

{¶ 12} Assignment of Error No. 1:

{¶ 13} TRIAL COURT ERRED BY REVOKING KUHN'S INTERVENTION IN LIEU OF CONVICTION STATUS WHEN THE EVIDENCE ADDUCED AT THE HEARING FAILED TO ESTABLISH THAT SHE DELIBERATELY VIOLATED THE TERMS OF HER TREATMENT PLAN.

{¶ 14} In her first assignment of error, Kuhn argues the trial court erred by revoking her ILC when there was no evidence she deliberately and/or willfully violated the terms and conditions of her ILC treatment plan. However, as this court has stated previously, there is no authority to support Kuhn's claim that "she could only be found guilty of violating the terms and conditions of her ILC upon the state demonstrating she did so purposefully." *State v. Schwab*, 12th Dist. Warren No. CA2017-03-037, 2017-Ohio-7812, ¶ 13. Given the statutory definition of "purposely" as provided in R.C. 2901.22(A), we find the same would hold true regarding Kuhn's claims that she could only be found guilty upon the state demonstrating she did so deliberately and/or willfully. *See* R.C. 2901.22(A) ("[a] person

- 5 -

acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature"). Kuhn's claim otherwise lacks merit.

{¶ 15} In so holding, although addressing probation and community control violations, we note that several courts throughout this state have found no authority that mandated the state introduce evidence an offender willfully violated the terms of his or her probation or community control. *See State v. Stockdale*, 11th Dist. Lake No. 96-L-172, 1997 Ohio App. LEXIS 4363, *5 (Sept. 26, 1997) (no authority that mandates the state must introduce evidence showing probation violation was willful); *State v. Miller*, 6th Dist. Fulton No. F-05-016, 2006-Ohio-4810, ¶ 15 (no requirement that the state prove willfulness before the trial court can revoke an offender's community control); *State v. Wolfson*, 4th Dist. Lawrence No. 03CA25, 2004-Ohio-2750, ¶ 12 (state need not find an offender violated the terms of her community control willfully before the trial court could revoke the offender's community control); *but see State v. Grant*, 1st Dist. Hamilton Nos. C-150608 and C-150609, 2016-Ohio-7857, ¶ 18 (in order for a court to revoke an offender's community control for nonpayment of financial obligations, such as court costs, fees, and restitution, and sentence the offender to a term of imprisonment, the offender's failure must have been willful and not the result of indigence).

{¶ 16} These cases, however, although informative, "are inapplicable to the revocation of [ILC], which is a voluntary statutory rehabilitation program designed to give an offender the opportunity to address issues that contributed to the commission of the offense and to avoid a criminal conviction as long as the offender successfully completes the intervention plan and complies with its terms and conditions." *State v. Allen*, 10th Dist. Franklin No. 17AP-341, 2018-Ohio-305, ¶ 15. The fact remains that there is no authority to

support Kuhn's claim that "she could only be found guilty of violating the terms and conditions of her ILC upon the state demonstrating she did so purposefully." *Schwab*, 2017-Ohio-7812 at ¶ 13. Kuhn's first assignment of error lacks merit and is overruled.

{¶ 17} Assignment of Error No. 2:

{¶ 18} TRIAL COURT ERRED TO DETRIMENT OF MS. KUHN IN BELIEVING IT HAD NO DISCRETION TO CONTINUE HER ON INTERVENTION IN LIEU OF CONVICTION AFTER FINDING THAT SHE FAILED TO COMPLY WITH THE TREATMENT PLAN.

{¶ 19} In her second assignment of error, Kuhn argues the trial court erred by finding it was required to revoke her ILC upon finding her guilty of violating the terms and conditions of her ILC treatment plan rather than merely continuing her on ILC. We again disagree.

{¶ 20} As this court stated in *State v. Davis*, 12th Dist. Warren Nos. CA2013-12-129 and CA2013-12-130, 2014-Ohio-2122, it is well-established that the now former R.C. 2951.041(F) then in effect "clearly and unambiguously conveys the legislative intent that the trial court must sentence a defendant who is found to have failed his or her program of treatment in lieu of conviction to an appropriate sanction under R.C. Chapter 2929." *Id.* at ¶ 10, citing *State v. Abi-Aazar*, 149 Ohio App.3d 359, 2002-Ohio-5026, ¶ 34-36 (9th Dist.), citing *State v. Taylor*, 10th Dist. Franklin No. 99AP-533, 2000 Ohio App. LEXIS 950, *6 (Mar. 14, 2000); *see also State v. Cumston*, 3d Dist. Marion No. 9-99-83, 2000 Ohio App. LEXIS 3056, *5 (June 27, 2000) (addressing former R.C. 2951.041[F] finding it clear and unambiguous in its requirements that trial court must enter a guilt finding and a term of imprisonment for violation of intervention program conditions). This is markedly different from previous versions of R.C. 2951.041(F) that offered "no specific guidelines as to when a court should enter an adjudication of guilt and when it should allow the violator to remain in treatment." *State v. Thomas*, 4th Dist. Washington Nos. 88 CA 22 and 88 CA 29, 1989

Ohio App. LEXIS 2658, *22-23 (June 28, 1989) (addressing former statute that allowed court to "take such actions as it considers appropriate" upon finding a violation of the terms and conditions of ILC occurred). Therefore, based on the law in effect at that time, the trial court did not err by finding it was required to revoke ILC upon finding Kuhn guilty of violating the terms and conditions of her ILC treatment plan rather than continuing her on ILC.

{¶ 21} Kuhn nevertheless argues the trial court should have continued her on her ILC treatment plan due to the General Assembly passage of Am.Sub.S.B. No. 33, 2017 Ohio Laws File 40 on December 22, 2017. Pursuant to that bill, the General Assembly planned to amend R.C. 2951.041(F) by removing the requirement that mandated the trial court to sentence an offender who was found guilty of violating his or her ILC treatment plan to an appropriate sanction under R.C. Chapter 2929. Instead, pursuant to the now amended R.C. 2951.041(F), the General Assembly determined that it would be better practice to grant a trial court discretion to (1) continue the offender on ILC, (2) continue the offender on ILC with additional terms, conditions, and sanctions, or (3) enter a finding of guilty and impose an appropriate sanction under R.C. Chapter 2929 upon finding the offender failed to comply with the terms of his or her ILC treatment plan.

{¶ 22} That statute, however, although passed by the General Assembly on December 22, 2017, had an effective date of March 23, 2018. This was well after the trial court found Kuhn guilty of violating the terms and conditions of her ILC treatment plan. Although Kuhn suggests otherwise, it is well-established that a trial court, just as this court on appeal, must comply with the law as written and then in effect. Kuhn would undoubtedly prefer to be subject to the now amended ILC statute. Kuhn, however, did not have any rights vested by the General Assembly's passage of Am.Sub.H.B. No. 33 until its effective date of March 23, 2018. "In the absence of constitutional limitations, the legislature is free to determine for itself when an act shall go into effect." *State v. Dere*, 4th Dist. Ross No.

96CA2247, 1997 Ohio App. LEXIS 2961, *6 (June 30, 1997). This is true despite the language found in R.C. 1.58(B), which applies only "when a statute is amended after the commission of a crime but before sentence is imposed." *State v. Kaplowitz*, 100 Ohio St.3d 205, 2003-Ohio-5602, ¶ 8.

{¶ 23} The trial court in this case found Kuhn guilty of violating the terms and conditions of her ILC treatment plan by failing to report to her probation officer as instructed. Upon finding Kuhn guilty, the trial court then sentenced Kuhn to an appropriate sanction under R.C. Chapter 2929; specifically, three years of community control. This occurred well before amended R.C. 2951.041(F) came into effect on March 23, 2018. While Kuhn suggests otherwise, there was no reason to "arbitrarily wait" until the effective date to apply the statutory language of the now amended R.C. 2951.041(F) in this case. Given the fact that Kuhn stipulated that she did not report to her probation officer as required by the terms and conditions of her ILC treatment plan, the record fully supports the trial court's decision finding Kuhn guilty and thereafter sentencing her to a three-year community control term. Kuhn's second assignment of error is overruled.

{¶ 24} Assignment of Error No. 3:

{¶ 25} MS. KUHN WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶ 26} In her third assignment of error, Kuhn argues she received ineffective assistance of counsel when her trial counsel failed to move for a continuance until after the amendment to R.C. 2951.041(F) came into effect on March 23, 2018. We disagree.

{¶ 27} Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix,* 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14. As a result, to prevail on an ineffective assistance of counsel claim, Kuhn must demonstrate (1) her trial

- 9 -

counsel's performance fell below an objective standard of reasonableness, and (2) she was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984); *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7. The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim. *State v. Zielinski*, 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535, ¶ 50.

{¶ 28} As it relates to the first prong regarding her trial counsel's performance, Kuhn must show her trial counsel made errors so serious that he was not functioning as the "counsel" guaranteed a defendant by the Sixth Amendment to the United States Constitution. *State v. Miller*, 12th Dist. Clermont No. CA2011-04-028, 2012-Ohio-995, ¶ 27. On the other hand, as it relates to the second prong requiring a showing of prejudice, Kuhn must show that, but for her trial counsel's errors, there is a reasonable probability that the result of trial would have been different. *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 42. A "reasonable probability" is a probability that is sufficient to undermine confidence in the outcome. *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 31, citing *Strickland* at 694.

{¶ 29} As noted above, Kuhn argues her trial counsel was ineffective for not moving for a continuance until after the amendment to R.C. 2951.041(F) went into effect on March 23, 2018. In support, Kuhn claims that because her trial counsel did not move for a continuance, her trial counsel must have not been aware that the General Assembly had passed Am.Sub.S.B. No. 33 on December 22, 2017. However, based on a review of the record properly before this court, there is nothing to indicate Kuhn's trial counsel was unaware of that bill's passage by the General Assembly as Kuhn suggests. Kuhn's claim otherwise lacks merit and is based on nothing more than pure speculation.

{¶ 30} Regardless, even assuming Kuhn's trial counsel was unaware of the bill's

passage, "[i]t is well-established that a trial court has broad discretion in determining whether to grant or deny a continuance." *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 19. In other words, had Kuhn's trial counsel moved for a continuance, there is no guarantee the trial court would have granted Kuhn's request. This is particularly true here considering the amendment to R.C. 2951.041(F) did not become effective until three months later on March 23, 2018. "A trial court has the inherent authority to manage its own proceedings and control its own docket." *State v. James*, 5th Dist. Muskingum No. CT2015-0059, 2016-Ohio-7660, ¶ 35.

{¶ 31} Because it would have been well within the trial court's discretion to deny Kuhn's request for a three-month continuance if her trial counsel had made such a request, Kuhn's trial counsel could reasonably have concluded that moving for a continuance would have been a futile act. "An attorney is not ineffective for failing to make futile requests[.]" *State v. Harrop*, 12th Dist. Fayette No. CA2005-12-036, 2006-Ohio-6080, ¶ 14. Kuhn's trial counsel was therefore not ineffective for not moving for a continuance until after the amendment to R.C. 2951.041(F) went into effect on March 23, 2018.

{¶ 32} In so holding, we note that even if the trial court had continued the matter until after the amendment to R.C. 2951.041(F) came into effect, the amendment did not *require* the trial court to continue Kuhn on her ILC treatment plan. Rather, as noted above, with the passage of Am.Sub.S.B. No. 33, the General Assembly determined that it would be better practice to grant a trial court *discretion* to (1) continue the offender on ILC, (2) continue the offender on ILC with additional terms, conditions, and sanctions, or (3) enter a finding of guilty and impose an appropriate sanction under R.C. Chapter 2929 upon finding the offender failed to comply with the terms of his or her ILC treatment plan. Kuhn's claim otherwise lacks merit.

{¶ 33} Just as there was no guarantee that the trial court would have granted Kuhn's

request for a continuance, there was also no guarantee that the trial court would have exercised its discretion to continue Kuhn on her ILC treatment plan. The fact that the trial court stated on the record that it was required to revoke Kuhn's ILC upon finding her guilty of violating her ILC treatment plan "based on that reason and that reason alone" does not necessarily mean the trial court would have undoubtedly continued Kuhn on her ILC treatment plan as she now suggests. Rather, as discussed more fully above, we find the trial court was merely alluding to the fact that the now former R.C. 2951.04(F) as written and then in effect mandated the trial court to sentence an offender who was found guilty of violating his or her ILC treatment plan to an appropriate sanction under R.C. Chapter 2929.

{¶ 34} Based on the facts and circumstances of this case, Kuhn has failed to show that a three-month continuance until after the effective date of the amendment to R.C. 2951.041(F) would have resulted in a different outcome; specifically, that the trial court would have continued her on her ILC treatment plan. Therefore, because we find Kuhn's trial counsel did not provide her with ineffective assistance, Kuhn's third assignment of error is overruled.

**Conclusion**

{¶ 35} We find no merit to the arguments raised by Kuhn within her three assignments of error. Our decision, however, should in no way discourage Kuhn from continuing her efforts to overcome her substance abuse and mental health issues. Unfortunately, due to a recent increase in substance abuse within this court's jurisdiction, this court is all too familiar with the struggles of addiction and the impact substance abuse may have on one's mental health. However, as noted above, the trial court, just as this court on appeal, must comply with the law as written and then in effect. Simply stated, despite the clear support Kuhn's family provides, the fact remains that Kuhn violated the terms and conditions of her ILC treatment plan by failing to report to her probation officer

as instructed. Therefore, based on the now former R.C. 2951.041(F) applicable to the facts and circumstances of this case, the trial court did not err by revoking Kuhn's ILC and sentencing her to three years of community control after she pled guilty to single counts of trespass in a habitation, resisting arrest, and obstructing official business. Accordingly, because we can find no error in the trial court's decision, the trial court's decision in this case is affirmed.

{¶ 36} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.